IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| CRUMP-BUHLER, LLC, ) | |
| d/b/a CRUMP HYUNDAI; ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| v. ) | Case No. 6:11-cv-2264-TMP |
| ) | |
| HYUNDAI MOTOR AMERICA, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM OPINION**

This action is before the court on the motion for summary judgment filed on October 11, 2012, by defendant Hyundai Motor America. The matter has been fully briefed, and the parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. 636(c).

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

1

of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## UNDISPUTED FACTS

Viewing the evidence in the light most favorable to the nonmoving party, as this court must for purposes of summary judgment, the facts pertinent to the defendant's motion for summary judgment are as follows.

The plaintiff, Crump-Buhler, LLC, is a limited liability company composed of members

John H. Crump and Craig Buhler, which operated a car dealership in Jasper, Alabama, known as Crump Hyundai, pursuant to a franchise agreement with defendant Hyundai Motor America ("HMA"), the automobile manufacturer. The relationship between the dealer and the manufacturer of motor vehicles in Alabama is governed by the Motor Vehicle Franchise Act ("MVFA") set forth at Alabama Code § 8-20-1 et seq. The MVFA provides, in pertinent part:

> (f) Upon the termination, cancellation, or nonrenewal by the manufacturer of any franchise for good cause, the new motor vehicle dealer shall be paid fair and reasonable compensation by the manufacturer for the:
> ...
>
> (5) Dealership facilities .... If the facilities were leased and the lease was required as a precondition to obtaining the franchise or its renewal by the manufacturer, then the manufacturer shall use its best efforts to locate a lessee who will offer to lease the premises for a reasonable term at a reasonable rent. If the manufacturer does not locate a lessee within a reasonable time, the manufacturer shall pay such rent for three years or the remainder of the lease, whichever is less and the manufacturer shall have the option to succeed to the rights of the dealer under the lease.

Ala. Code 8-20-5(f)(5).[1]

In July of 2005, John H. Crump, the majority owner of Crump Hyundai, began corresponding with HMA about opening a Hyundai dealership in Jasper. Approximately four to five months later, on December 16, 2005, Mr. Crump signed a Dealer Sales and Service Agreement with HMA to begin operation as a Hyundai dealer. Mr. Crump testified that two to four months was a standard length of time for a dealer franchise agreement to be processed.

---

[1] The act was amended on March 9, 2010, after the agreement at issue here was terminated. Accordingly, the earlier version of the act applies to this case. The amended act contains the same provision, but is recodified as Section 8-20-5(g)(6).

Crump Hyundai leased the property on which the dealership operated from Mr. Crump personally.[2]  The property included a showroom, service bays, and large paved parking lots.  The property previously was used as a Mitsubishi dealership, and it adjoined Mr. Crump's Madza dealership and shared a general office with that dealership.  Pursuant to the lease on the Jasper property, Crump Hyundai agreed to pay Mr. Crump $7,812.50 per month for five years, beginning in September 2005 and ending on August 31, 2010.

During 2008, the dealership experienced financial difficulties, operating with negative net working capital and overdrawing on its bank account by approximately $1 million.  During some months of the lease period, Crump Hyundai paid Mr. Crump much smaller amounts as rent: $500 in March 2008, $80 in April 2008, $600 in May 2008, and $500 in August, 2008.  Because of the dealership's financial difficulties, Mr. Crump decided to try to sell the dealership in the summer of 2008.

On October 15, 2008, the Fifth Third Bank, which provided Crump Hyundai with a floor-plan line of credit suspended Crump's line of credit.  The credit plan was a requirement of the agreement with HMA.  HMA notified Mr. Crump that if the financing plan was not reinstated, HMA would consider terminating the agreement.  Less than two weeks later, on October 27, 2008, the dealership was damaged by fire, and the business was closed.[3]  Richard Dorn, market representation manager of HMA, who was responsible for HMA's market representation in states from New Mexico to Alabama, came to visit the Crump Hyundai property in November of 2008,

---

[2]  The parties do not dispute that the lease was a "precondition" to the agreement as set forth in the statute.  Ala. Code 8-20-5(f)(5).

[3]  At the time of Mr. Crump's deposition, one of the dealership's employees had been indicted but not yet tried on a charge of arson.

but the building was locked and closed, apparently still in disrepair after the fire.  In response to a letter from plaintiff's counsel, HMA's vice president notified plaintiff on February 4, 2009, that Crump Hyundai would need to provide "substantiation" that the property had been repaired following the fire, including a certificate of occupancy from the local building inspection office, "in order to seek another tenant for the building."  On March 5, 2009, HMA terminated the franchise agreement with Crump Hyundai based upon its lack of floor-plan financing.  Mr. Crump does not recall providing HMA with information regarding repairs or occupancy.  He did testify, however, that he authorized his attorney to send an invoice from a contractor to HMA that would show that repairs were complete as of May 24, 2009, but he does not know whether the invoice was sent.  Dorn testified that no such documentation was received by HMA.  On June 20, 2009, Dorn asked plaintiff's counsel whether the fire damage had been repaired and whether the certificate of occupancy had been obtained.

In spite of a lack of evidence that the repairs were complete, Dorn began in April 2009 attempting to find a dealer who would take over the Jasper Hyundai dealership and the leased property on which it sat.  He approached Mark Livings about opening a dealership in the Crump location, but Livings ultimately decided to concentrate on franchises located in Birmingham. HMA also sent a dealer information package to Robert Maloy on July 19, 2009.  Maloy did not take over the dealership because he failed to secure a floor plan, which was very common during the economic climate of that time.  Maloy sought investors for his dealership plans, and HMA provided Maloy with another dealer package in January 2010.  Maloy did not receive the investments he sought, and was unable to acquire the franchise.  HMA also discussed the Jasper dealership with Welsey Goodson, but Goodson lacked financing and also failed to meet HMA's qualifications regarding sales, capitalization, and customer satisfaction.  In September 2009,

HMA sent a dealer package to Scott Crump, the local Toyota dealer and Mr. Crump's son. Scott Crump declined the offer to seek the dealership. Dorn talked with Carl Cannon, another Jasper automobile dealer, and with the National Association of Minority Automotive Dealers as part of his efforts to lease the Crump property to a new Hyundai dealer. Dorn testified that he did everything he could to get someone to lease the dealership facility, and that, under market circumstances, he located a lessee within a reasonable period of time. He talked with Honda dealers, Toyota dealers, and Nissan dealers about opening a Hyundai dealership in the Crump location. Dorn is experienced in pursuing potential dealership agreements in his job at Hyundai, and in previous jobs as a market representation manager for Mazda, Subaru, and Nissan.

Dorn also negotiated with Tal Vickers and Kevin Callahan over many months beginning when Crump first notified HMA that it was experiencing difficulty in 2008. Dorn visited Callahan in person at least twice after the fire, and talked with him on numerous other occasions. Vickers and Callahan did not show much interest in early meetings with Dorn, but eventually, in March 2010, Dorn sent them a dealer package to them, and Vickers and Callahan submitted the proper documentation in May 2010. In June 2010, Vickers' company negotiated with Mr. Crump and signed a lease agreement to rent the property from Mr. Crump, and became the new Jasper Hyundai dealer. The lease requires Vickers' company to pay Mr. Crump $10,000 per month for the initial three-year term, with an option to extend the lease at $12,000 per month after the expiration of the three-year term.

Dorn did not approach any businesses other than potential Hyundai dealers about the Crump property, and did not make any attempts to lease the building for any purpose other than as a car dealership. Mr. Crump approached the City of Jasper about renting his building for use by the police department, but the City was not interested. Crump Hyundai has not offered any

evidence that any other type of business would have offered to lease the property during the thirteen months between the time the Crump Hyundai property became suitable for occupancy after the fire, and the signing of the new lease agreement.

Dorn testified that he was fair in working to replace Crump's dealership, and that the time it took to find a lessee was reasonable given the economy at that time. He explained: "[Y]ou have to bear in mind at this point in time with the economy being where it was, and specifically for car dealers, there were a lot of dealers losing their floor plans as Mr. Crump did; General Motors was in a contraction mode, GMAT was really tightening up on available floor plans, Chrysler Credit was basically shutting down. You have got – Ford Motor Credit was dramatically restructuring, tightening things up. Fifth Third Bank got out of the State of Alabama. ... that was a point in time when it was extremely, extremely difficult, even for a well-qualified dealer candidate to secure a floor plan." (Doc. 13-6, Depo. of Dorn, pp. 121-22).

Plaintiff filed suit against HMA in the Circuit Court of Walker County, alleging a single claim: that HMA wrongfully refused to pay rent to Crump after the dealership agreement was terminated in violation of the Alabama Motor Vehicle Franchise Act. Crump asserts that HMA was required to pay a reasonable amount of rent for the dealership property between the termination of the agreement and the time that the new dealer leased the property. The case was removed to this court on the basis of diversity jurisdiction.

## DISCUSSION

The defendant seeks summary judgment on grounds that HMA used its "best efforts" and found a lessee for the Crump property in a "reasonable time" as required by the § 8-20-5(f)(5) of the Alabama Motor Vehicle Franchise statute, and therefore is not liable for any rent payments.

Plaintiff asserts that the issue of whether HMA's efforts were sufficient and the time was reasonable is necessarily fact-intensive and a jury question and is not amenable to summary adjudication.

There are no cases construing the "best efforts" or "reasonable time" requirements of Alabama Code § 8-20-5(f)(5). In this case, the defendant-movant has asserted that HMA, through Dorn, exerted its best efforts at finding a lessee for the building by approaching and negotiating with several potential dealers, and that the twelve to thirteen months it took to complete the process was a reasonable time based upon the paucity of financing opportunities available during that time. Plaintiff simply disagrees, but does not offer any evidence that there were dealers interested in taking over the business that could have been located, evaluated, financed, and approved in less time. Nor has plaintiff offer any evidence that other businesses were interested in leasing the property for some other purpose than as a car dealer. Plaintiff's counsel speculates that Dorn could have hired a realtor to find some other business to rent this property, but has offered no facts to dispute the facts presented by HMA: that the property was best suited for a car dealership, and that HMA actively pursued potential dealers.

Ultimately, the court is not left with a question of fact as to whether HMA acted reasonably. The court is left with a movant that has demonstrated by evidence that there is no genuine issue of material fact, and a nonmovant that has failed to present any evidence that puts the movant's evidence into dispute. The role of the court at this juncture is to decide whether the shifting burdens of proof has been met. The Eleventh Circuit Court of Appeals has explained:

> The district court must enter an order of summary judgment when, taking the facts in the light most favorable to the nonmoving party, there is "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Where the nonmoving party has failed to

> make a sufficient showing "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there exist no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." Hairston, 9 F.3d at 919 (citations omitted).
>
> Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence. It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment. See, e.g., Beckwith, 58 F.3d at 1564; Hairston, 9 F.3d at 918; T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630–32 (9th Cir.1987).

Mize v. Jefferson City Bd. Of Educ., 93 F.3d 739, 742 (11th Cir. 1996).

Two essential elements to the plaintiff's case, on which the plaintiff bears the burden of proof at trial, are whether HMA failed to exercise its "best efforts" and whether thirteen months to locate and process the paperwork for a new lessee was not "reasonable." While plaintiff argues that HMA should have looked for tenants who were not in the car business, or that HMA should have used a broker to negotiate a lease with some unknown entity, such as a beauty shop, the evidence is undisputed that the property was built for, previously used as, and well suited for a new car dealership. Plaintiff essentially argues that, because the statute requires "best efforts," HMA surely could have done more than it did. This reading of the statute, however, fails to take into account the other requirements HMA had to observe in seeking a lessee. The statute requires the manufacturer to locate a lessee "who will offer to lease" the premises for "a reasonable term" and at "a reasonable rent." Not just any lessee would do. A lessee that could

properly meet the "reasonable term" and "reasonable rent" requirements almost necessarily would have to be a car dealership. The building was configured for a car dealership, with a large showroom and service bays. The building was surrounded by a large paved lot for displaying a large number of automobiles. There is no evidence that the premises could be easily sub-divided or reconfigured for a business other than a car dealership. Indeed, the statutory mandate that the manufacturer locate "a lessee" suggests even that premises may not be sub-divided and leased among several lessees to distribute the expense; a single lessee must be found. Thus, in order for HMA to comply with the statutory requirements that it locate "a lessee" willing to lease at a "reasonable rental" and for a "reasonable term," it had to locate a business that could use the space as it existed at a monthly rental approaching $8,000.00, or even more. These requirements drastically restricted the market of potential lessees. Not just any beauty salon or service station or retail shop would be willing to "offer to lease" the premises under those conditions. HMA's "best efforts" were focused properly on finding a replacement automobile dealership to lease the premises.

Plaintiff has offered no evidence that any other business of any type would have been willing to lease the property. While plaintiff chides HMA for seeking only a Hyundai dealer for the property, and not, say, a Ford dealer, plaintiff has not offered any evidence that there were any "open points" for any other manufacturers in Jasper. Defendant has offered evidence that GMAC, General Motors, and Ford were in a "contraction" and that floor-plan financing for dealerships was extremely difficult to obtain. There simply is no evidence that suggest that HMA failed to take advantage of an opening in the Jasper automobile market. In 2009 and 2010, precious few openings

existed anywhere.

Much of the evidence and argument presented by the plaintiff revolves around the amount of rent that would be considered reasonable if HMA were required to pay rent. Mr. Crump asserts that HMA offered to pay $500 a month,[4] which reflects the amount Crump Hyundai had paid some of the months in 2008. Mr. Crump clearly found such an offer to be an insult. Nevertheless, any obligation to pay any rent would be triggered under the statute only "[i]f the manufacturer does not locate a lessee within a reasonable time." Ala. Code § 8-20-5(f)(5). Thirteen months to locate such a specialized lessee was clearly reasonable, and there is no evidence creating a genuine issue to the contrary. There is no evidence that HMA failed to contact automobile dealerships that existed and could afford to lease the space. There is no evidence that any other kind of business was interested in doing so. Plaintiff simply speculates that there must have been more that HMA could have done. Speculation does not create a genuine issue of fact. Crump Hyundai is not entitled to any payment of rent by HMA unless HMA failed to use its best efforts to acquire the new tenant within a reasonable time. Based upon all of the arguments and evidence offered in support of and in opposition to the motion for summary judgment, the plaintiff has failed to demonstrate that HMA violated the AMVFA, and the motion to dismiss the plaintiff's claim for rent payments under the Act is due to be granted.

---

[4] Plaintiff's brief does not direct the court to any evidence reflecting when or in what form this offer was made, but the deposition testimony reflects that the amount of $500 was discussed as a rent to be paid by HMA. The court views this offer as irrelevant to the threshold issue presented by the motion for summary judgment – whether the defendant has shown the absence of any genuine issue of material fact as to plaintiff's claim that the defendant failed to use its best efforts to locate a tenant in a reasonable time.

CONCLUSION

The court finds that defendant has shown that there is no genuine issue of fact concerning its efforts to locate a lessee for the plaintiff's premises. The undisputed *evidence* shows that HMA used its "best efforts" to locate a lessee willing to "offer to lease" the premises for a "reasonable term" at a "reasonable rent," and that it did so within a "reasonable time." Everything else is speculation, with an invitation to allow a jury to speculate. The market as it existed in 2009 and 2010 cannot be ignored, particularly when the nature of the premises to be leased narrowed the market of potential lessees to a highly specialized group. There is no evidence that HMA could have done more to find a lessee capable of offering to lease these premises in a significantly shorter time period.

A separate order will be entered granting the motion for summary judgment and dismissing this action.

DONE the 16th day of September, 2013.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE